MURPHY, Circuit Judge,
dissenting.
This case involves the STB’s construction of a statute it administers and, thus, this court must first determine “whether Congress has spoken directly to the precise question at issue.” Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 *1259 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Because Congress has directly-addressed the issue in this case, I respectfully dissent from the majority’s conclusion that it is permissible for the STB to consider an offeror’s intention to provide continued rail freight service.
Section 10904(d)(1) clearly allows the STB to consider the offeror’s financial ability to run the rail line. I also agree that the language of the statute evinces Congress’ intent to encourage the continuation of rail freight service along lines that would otherwise be abandoned. See 49 U.S.C. § 10904. Under the express language of the statute, however, an offeror is precluded from transferring the rail line or discontinuing rail freight service for a period of two years. See id. § 10904(f)(4)(A). This language makes it clear that Congress only requires an offeror to continue rail service for a two-year period. Thus, Congress has precluded the STB from considering the offeror’s intentions with respect to the rail line beyond the initial two-year period.
Petitioners have averred that rail freight service will not be discontinued for the obligatory two-year period and have identified five potential shippers who may have a need for the line. The STB has not made a finding that Petitioners intend to transfer or discontinue service on the line before the end of the second year after the transfer, or that Petitioners are financially unable to provide such service. Thus, Congress’ intent as expressed in the statute is served by the OFA filed by Petitioners; the rail line in question will remain available to shippers seeking to run freight for the next two years.
The STB has attempted to supplement the clear and unambiguous language Congress used in § 10904 to fit the unique circumstances presented by this case. There exists, however, a different statutory mechanism by which these unique circumstances could have been addressed. In cases where the rail line is appropriate for public purposes, the party seeking to abandon the line can be exempted from the OFA process. See 49 U.S.C. § 10502; The Cent. R.R. Co. of Indianapolis — Discontinuance of Serv. Exemption — In Clinton, Howard and Tipton Counties, STB Docket No. AB-289 (Sub-No. 4X), at 5 (served Jan. 15, 1999). Although RFRHA sought just such an exemption from the OFA process in this case, its request was denied by the STB because RFRHA did not present sufficient information to support the exemption. In its motion to dismiss the OFA, RFRHA requested the STB to reconsider the denial of the exemption. Although the STB indicated in hindsight that “it would have been appropriate to exempt this line from the OFA process,” it did not specifically grant the exemption or vacate its earlier decision denying the exemption. Roaring Fork R.R. Holding Auth. — Abandonment Exemption — In Garfield, Eagle, and Pitkin Counties, Colo., STB Docket No. AB-547X, at 6 (served May 21, 1999). RFRHA does not appeal from the STB’s denial of the exemption. The unambiguous statutory language in § 10904 should not be distorted as a means to reach the same ends that could have been reached if the STB had granted RFRHA an exemption from the OFA process.
Because congressional intent can be discerned from the plain language of § 10904, the STB’s interpretation is not entitled to any deference. See Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778. I conclude that Congress has expressly foreclosed the STB from considering whether the offeror intends to continue rail service beyond the two-year period expressly stated in the statute. I, therefore, dissent from the majority’s conclusion that the STB has the implied authority to consider the offeror’s intentions with respect to the rail line beyond the end of the two-year period.